Kathy A. Le (SBN 279690)
Kathy.Le@jacksonlewis.com
Lauren B. Shelby (SBN 312879)
Lauren.Shelby@jacksonlewis.com
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, CA 92618
Telephone: (949) 885-1360

Attorneys for Defendant
WYNDHAM VACATION OWNERSHIP, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY ROMALDA ARROYO, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WYNDHAM VACATION OWNERSHIP, INC., and DOES 1 to 100, inclusive,<br><br>Defendants. | CASE NO. 3:25-cv-05585<br><br>Removed from Monterey County Superior Court, Case No. CV426886<br><br>**DEFENDANT WYNDHAM VACATION OWNERSHIP. INC.'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA – PURSUANT TO 28 U.S.C. §§ 1332(a). 1367(a). 1441(a) and 1441(b). and 1446**<br><br>**[DIVERSITY AND SUPPLEMENTAL JURISDICTION]**<br><br>Complaint Filed: April 29, 2025 |

**TO THE HONORABLE COURT AND TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that WYNDHAM VACATION OWNERSHIP, INC. ("Defendant" or "WVO") hereby removes this matter to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1367(a), 1441 (a)-(b), and 1446. Defendant hereby provides "a short and plain statement of the grounds for removal," pursuant to 28 U.S.C. § 1446(a). In the event the Court requires that Defendant prove the facts alleged in this pleading, or otherwise establish jurisdiction, Defendant is prepared to do so. The grounds for removal are as follows:

## Nature of Action and Claims

1. On or about April 29, 2025, Plaintiff AUDREY ROMALDA ARROYO ("Plaintiff") commenced this action by filing a putative class action complaint ("Complaint") against Defendant in the Superior Court of the State of California for the County of Monterey, Case No. 25CV002249, captioned *Audrey Romalda Arroyo v. Wyndham Vacation Ownership, Inc.* ("State Court Action"), alleging the following eight causes of action for: (1) failure to pay wages for all hours worked at minimum wage in violation of Labor Code §§ 1194 and 1197; (2) failure to pay overtime wages for daily overtime worked in violation of Labor Code §§ 510 and 1194; (3) failure to authorize or permit meal periods in violation of Labor Code §§ 512 and 226.7; (4) failure to authorize or permit rest periods in violation of Labor Code § 226.7; (5) failure to pay wages for accrued paid sick days at the regular rate of pay in violation of Labor Code § 246; (6) failure to provide complete and accurate wage statements in violation of Labor Code § 226; (7) failure to timely pay all earned wages and final paychecks due at time of separation of employment in violation of Labor Code §§ 201-203; and (8) unfair business practices, in violation of Business and Professions Code §§ 17200, *et seq.* A true and correct copy of the Summons, Complaint, Civil Case Cover Sheet, Notice of Assignment and Case Management Conference is attached as **Exhibit A** to the Declaration of Kathy A. Le ("Le Decl."), filed concurrently with this Notice of Removal.

2.     Plaintiff served WVO with the Complaint personally pursuant to California Code of Civil Procedure § 416.10, by personally delivering the Summons and Complaint on June 2, 2025, to WVO's agents for service of process. (*Id.* ¶ 2.)

3.     The Complaint does not specify the dollar amount of damages being sought. (*Id.* ¶¶ 3, 5, Exh. A (Complaint).)

4.     On July 1, 2025, Defendant filed and served its Answer in Monterey County Superior Court. (*Id.* ¶ 6, Exh. B.)

### Compliance with Statutory Requirements

5.     Defendant's removal is timely because it has been filed within thirty (30) days after Defendant first ascertained the case was removable, which was June 2, 2025. (*Id.* ¶ 4; *see* 28 U.S.C. § 1446(b)(3); Cal. Code Civ. P., § 412.20(a)(3).) Thus, Defendant's removal is therefore filed within the period mandated by 28 U.S.C. § 1446(b)(3).

6.     In accordance with 28 U.S.C. § 1446(a), Exhibits A and B to the Le Decl., filed herewith, constitute all pleadings and court orders that Defendant is aware of having been filed in the State Court Action as of the date of filing this Notice of Removal. (Le Decl., ¶¶ 5-7, Exhs. A and B.)

7.     Per 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting pleadings will be served promptly on Plaintiff's counsel and filed with the Clerk of the Monterey County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

### Venue is Proper

8.     Venue of this action lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441, *et seq.* and 1391(a) because Plaintiff's State Court Action was filed in this district and Plaintiff alleges that this is the judicial district in which the action arose.

### Jurisdiction is Proper

9.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, which provides that federal courts have original jurisdiction of "all civil actions

where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). Both requirements are satisfied because the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between Plaintiff and WVO.

## Diversity of Citizenship

10. Diversity jurisdiction exists where there is diversity of citizenship between the parties at the time the lawsuit is filed. *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004).

11. <u>Plaintiff's Citizenship</u>. For diversity purposes, a person is a "citizen" of the State in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Zavala v. Deutsche Bank Tr. Co. Ams.*, 2013 U.S. Dist. LEXIS 96719, at *9 (N.D. Cal. July 10, 2013) ("A party's residence is 'prima facie' evidence of domicile. In the absence of [contrary] evidence, [plaintiff] is a California citizen").

12. Plaintiff alleges in the Complaint that she "is and was a resident of California and was employed by Defendant[] in the State of California within the four (4) years prior to the filing of th[e] Complaint" and that she and the putative class worked for Defendant in Monterey County, California. (Complaint ¶¶ 2-3.) Moreover, Plaintiff provided a residential address in California to Defendant throughout her employment. (Declaration of Laurie Saltzman-Kovatch ("Saltzman-Kovatch Decl."), ¶ 5.) Accordingly, Plaintiff is a citizen of the State of California within the meaning of 28 U.S.C. § 1332(a).

13. <u>Defendant WVO's Citizenship</u>. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The United States Supreme Court has confirmed that to determine a corporation's principal place of business, a court must apply the "nerve center" test. *See Hertz Corp. v. Friend*, 559 U.S. 77 (2010). In relevant part, the Court explained, as follows:

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id*. at 92-93.

14. Defendant WVO is incorporated and organized under the laws of the State of Delaware, with its headquarters and principal place of business in the State of Florida, located at 6277 Sea Harbor Dr., Orlando, FL 32821. (Saltzman-Kovatch Decl., ¶¶ 2-3.) At all relevant times, WVO's primary executive, administrative, financial, and management functions and operations have been concentrated in and controlled from its corporate headquarters in Florida. (*Id*.) WVO's high-level corporate officers and administrators are located at the corporate headquarters and they direct, control, and coordinate WVO's services and overall business operations from the corporate headquarters in Florida. (*Id.*) Thus, WVO's principal place of business is in Orlando, Florida. Accordingly, WVO is a citizen of Florida and Delaware.

15. For purposes of removal, the citizenship of Doe defendants is disregarded and only named defendants are considered. 28 U.S.C. § 1441(a); *Accord, Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998) (citing 28 U.S.C. § 1441(a)). Here, Does 1 through 100, inclusive, as asserted in the Complaint are wholly fictitious. The Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants.

16. Based on the foregoing, there is complete diversity allowing removal by Defendant as Plaintiff is a California Citizen and WVO is a citizen of Delaware and Florida.

## Amount in Controversy

17. This action also meets the amount in controversy requirement for removal based on traditional diversity jurisdiction. 28 U.S.C. § 1332(a). Without conceding that Plaintiff is entitled to damages or could recover damages in any amount whatsoever, the

amount in controversy for Plaintiff's claims exceeds the sum of $75,000, exclusive of interests and costs, for the reasons discussed below.

18. The Complaint does not specify the total amount of monetary relief sought. However, the failure of the Complaint to specify the total amount of monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *See* 28 U.S.C. § 1446(c)(2)(a) (allowing the Notice of Removal to assert the amount in controversy if the initial pleading seeks non-monetary relief or a money judgment, and the State practice does not permit a demand for a specific sum and the District Court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000); *White v. J.C. Penney Life Ins. Co.*, 861 F.Supp.25, 26 (S.D. W. Va. 1994) (defendant may remove to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, a plaintiff could avoid removal by declining to place a dollar value on claims).

19. A "defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1997) (a defendant need only establish by a preponderance of the evidence that it is more probable than not that the plaintiff's claimed damages exceed the jurisdictional minimum.)

20. When determining whether the amount in controversy meets the threshold for a removal, a court may consider the aggregate value of claims for compensatory damages and attorneys' fees recoverable by statute. *See e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-1156 (9th Cir. 1998); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorneys' fees can be considered in determining whether the jurisdictional amount is met.").

21. In analyzing whether the amount in controversy exceeds $75,000, the Court must presume the Plaintiff will prevail on each and every one of her claims. *Kenneth*

*Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (amount in controversy analysis presumes that "plaintiff prevails on liability,"), citing also *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated.").

22. The ultimate inquiry is what amount is placed "in controversy" by the Complaint and not the amount that a defendant would owe if the plaintiff prevailed. *Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010); *see also Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe. It's a question as to what is in controversy."). The "amount in controversy is simply an estimate of the total amount in dispute." *Lewis*, 627 F.3d at 400. The argument and facts set forth may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002).

23. Here, the jurisdictional amount is satisfied because Plaintiff's claims exceed the sum or value of $75,000. Plaintiff's seeks damages, unpaid wages including unpaid overtime and minimum wages and unpaid premium wages, liquidated damages, penalties including waiting time penalties, pre-judgment interest, post-judgment interest, restitution, injunctive and declaratory relief, and statutory attorneys' fees. (Complaint, Prayer for Relief.) In the Complaint, Plaintiff seeks the following specific claims:

    a. <u>Unpaid minimum wages</u>. Plaintiff alleges Defendant failed to pay Plaintiff and the minimum wage subclass for all hours worked at the legal minimum wage by employing "policies, practices, and/or procedures, ***including, but not limited to,*** "requiring [they] continuously keep and monitor their communication devices on them at all times during their shifts including while off the clock during meal breaks, without being paid for that time" that was under Defendant's control. (Complaint ¶ 15(a) and ¶¶ 13-17, 52-55.) She also alleges Defendant required them

to work on "restricted on-call/standby time without…being paid for that time unless actually called in to work." (*Id*. ¶¶ 15(b), 53(b).) From Plaintiff's personnel and pay records, her rate of pay was $30.36 per hour. (Saltzman-Kovatch Decl., ¶ 5.) Between the beginning of the alleged class period on April 29, 2021 and Plaintiff's separation from Defendant on June 28, 2025, and excluding Plaintiff's leave of absence during this time, Plaintiff worked approximately 203.7 weeks.[1] (*Id*.) Plaintiff prays for liquidated damages under Labor Code section 1194.2 (Complaint, Prayer for Relief, ¶ 4 first cause of action). Liquidated damages are considered for the amount in controversy in removals. *See Tompkins v. C&S Wholesale Grocers, Inc*., 2011 U.S. Dist. LEXIS 77782, at *7-8 E.D. Cal. July 9, 2011). Labor Code § 1194.2 provides that an employee can recover liquidated damages "in an amount equal to the wages unlawfully unpaid[.]" Based on Plaintiff's allegations that she performed this off-the-clock work through every shift, and through all breaks—estimating two rest breaks and one meal break per shift—that equals approximately 50 minutes per day of alleged off-the-clock work at five workdays per week, the amount in controversy with respect to Plaintiff's unpaid minimum wages or off-the-clock work claim equates to at least **$51,453.64** (([$30.36 per hour x 4.16 hours of unpaid work each week] x 203.7 weeks) x 2).[2]

    b.    <u>Unpaid overtime wages</u>. Plaintiff alleges that Defendant failed to pay her and the overtime subclass for all overtime hours worked at the proper rate by employing "policies, practices, and/or procedures ***including, but not limited to*** requiring [they] continuously keep and monitor their communication devices "at all times during their shifts including while off-the-clock during meal breaks without being paid for that time" under Defendant's control. (Complaint ¶ 20(a) and ¶¶ 18-25.) She also alleges Defendant required them to work on "restricted on-call/standby

---

[1] Plaintiff was employed by WVO from March 3, 2020 to June 28, 2025. (Saltzman-Kovatch Decl., ¶ 5.)

[2] This amount does not include additional minimum wages based on Plaintiff's allegations of working restricted on-call standby time Defendant did not pay Plaintiff and Class members, which further increases the unpaid minimum wage claim amount. (Complaint ¶ 15(b).)

time without…being paid for that time unless actually called in to work." (*Id.* ¶ 20(b).) Plaintiff alleges that for shifts where they already worked 8 hours and weeks where they already worked 40 hours, they should have been paid overtime for this off-the-clock work. (*Id.* ¶ 22.) Based on Plaintiff's allegations that she performed off-the-clock work through every shift and all breaks, which equals approximately 50 minutes per day of alleged off-the-clock work. Assuming 3 hours of overtime per week, Plaintiff's unpaid overtime claim therefore equates to at least **$27,829.49** ([$30.36 per hour x 1.5] x 3 hours of unpaid overtime each week x 203.7 weeks.[3]

      c.   <u>Meal period premiums</u>. Plaintiff alleges that Defendant failed to provide all legally required and compliant meal periods to Plaintiff and the meal period subclass and failed to pay them ***any*** meal period premium wages by employing "policies, practices, and/or procedures ***including, but not limited to*** requiring [they] continuously keep and monitor their communication devices at all times during their shifts including while off-the-clock during meal breaks without being paid for that time" under Defendant's control and by failing to provide them with a second uninterrupted duty-free meal period when they worked shifts over ten (10) hours. (Complaint ¶¶ 28(a)-(b), 29, and 26-31.) She also alleges when a premium for a non-compliant meal period was paid, it was not paid at the proper rate of pay. (*Id.* ¶ 30.) Based on Plaintiff's allegations that Defendant failed to provide her and the meal period subclass with compliant meal periods or "***any*** meal period premiums wages," the amount in controversy with respect to Plaintiff's missed meal period allegation equates to at least **$30,921.66** ($30.36 per hour x 1 meal period violation each day x 5 workdays per week x 203.7 weeks).[4]

---

[3] This amount does not include additional overtime wages based on Plaintiff's allegations of working restricted on-call standby time Defendant did not pay them for when not called in to work or Plaintiff's allegations that Defendant failed to pay overtime at the proper rate of pay, both of which further increase the unpaid overtime claim amount. (Complaint ¶¶ 23-25.)

[4] This amount does not include additional unpaid meal premiums based on Plaintiff's allegation that when premiums were paid, Defendant failed to pay them at the proper rate of pay. (Complaint ¶ 30.)

        d.    <u>Rest period premiums</u>. Plaintiff alleges that Defendant failed to provide Plaintiff and the rest period subclass with compliant rest periods—or with any rest period premiums—by employing policies, practices, and/or procedures that ***included, but were not limited to*** (i) failing to provide "net ten (10) minute rest breaks for every four (4) hours worked or major fraction thereof;" (ii) failing to provide a timely second rest period or any second rest period at all, if there was no coverage; (iii) requiring [they] continuously keep and monitor their communication devices at all times during their shifts including while off-the-clock during meal breaks without being paid for that time; and (iv) failing to provide a third compliant rest period for shifts over ten (10) hours. (Complaint ¶¶ 34-35.) Plaintiff also alleges when a premium for a non-compliant rest period was paid, it was not paid at the proper rate of pay. (*Id*. ¶ 36.) Based on Plaintiff's allegations that Defendant failed to provide her and the rest period subclass with compliant rest periods or "***any*** meal rest period premiums wages," the amount in controversy with respect to Plaintiff's missed rest period allegation equates to at least **$30,921.66** ($30.36 per hour x 1 meal period violation each day x 5 workdays per week x 203.7 weeks).[5]

        e.    <u>Unpaid sick time</u>. Plaintiff alleges that Defendant failed to provide paid sick days to Plaintiff and the sick pay subclass by lacking a policy, practice or procedure for them to accrue sick days at the proper rate of one hour per 30 hours worked. (Complaint ¶¶ 128-133.) She also alleges when sick time was used it was not paid out at the proper rate of pay. (*Id*.) Plaintiff's allegations are unquantified and vague, thus, based on an assumption of 48 hours of alleged unpaid sick time over Plaintiff's employment, the amount in controversy equates to approximately **$1,457.28** ($30.36 per hour x 48 hours).

        f.    <u>Wage statement penalties</u>. Plaintiff alleges that Defendant failed to provide accurate wage statements to her and the Wage Statement subclass who were

---

[5] This amount does not include additional unpaid rest premiums based on Plaintiff's allegation that Defendant failed to pay them at the proper rate of pay. (Complaint ¶ 36.)

subject to Defendant's control for uncompensated time and who did not receive all their earned wages (including minimum wages, overtime wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code § 226. (Complaint ¶¶ 43-44.) Plaintiff further alleges they are entitled to recover $50 per employee for the initial pay period in which a wage statement violation occurred and $100 per employee per violation for each subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee. (Complaint ¶ 154.) Defendant paid Plaintiff on a bi-weekly basis, and her records indicate 101.9 pay periods between April 29, 2021 and June 28, 2025, excluding the weeks Plaintiff was on leave. (Saltzman-Kovatch Decl., ¶ 5.) Based on the allegations of unpaid minimum wages, overtime wages, meal premiums, and rest premiums, the penalties for Plaintiff's wage statement claim equates to at least $10,140.00 ($50 initial penalty + (100.9 pay periods x $100 penalty)). However, the penalty is capped at **$4,000.00**.

        g.    <u>Waiting time penalties.</u>  Plaintiff alleges that Defendant "failed to pay Plaintiff and on information and belief, the Waiting Time [subc]lass, with all wages earned and unpaid prior to separation of employment [.]" (Complaint ¶ 160.) Based on the allegations of unpaid minimum wages, overtime, meal premiums, and rest premiums, with an 8-hour workday, the penalties for Plaintiff's waiting time claim equates to at least **$7,286.40** ($30.36 per hour x 8 hours each day x 30 days).

24.    <u>Attorneys' fees.</u>  Plaintiff is also seeking attorneys' fees pursuant to Labor Code §§ 218.5, 226, 1194, as well as Code of Civil Procedure § 1021.5. (Complaint, Prayer ¶ 6 first cause of action, ¶ 5 second cause of action, ¶ 5 sixth cause of action, ¶ 4 seventh cause of action, and ¶ 5 eighth cause of action).

25.    The Court may examine the nature of the action and the relief sought and take judicial notice of attorneys' fee awards in similar cases. *See e.g.*, *Simmons*, 209 F.Supp.2d at 1035 (attorneys' fees in individual employment discrimination cases often exceed damages). Indeed, cases in the Ninth Circuit firmly establish that statutory attorneys' fees will be included as a basis for determining the jurisdictional amount in

controversy. *See Galt G/S*, 142 F.3d at 1155-56. Furthermore, such fees are calculable beyond the time of removal. *Simmons,* 209 F.Supp.2d at 1035; *see also Serrano v. Unruh,* 32 Cal.3d 621, 639 (1982) ("We hold therefore that, absent circumstances rendering the award unjust, fees recoverable under § 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim."); *Velasquez v. Khan*, 2005 U.S. Dist. LEXIS 28956, at *11 (E.D. Cal. Sep. 28, 2005) (awarding reasonable attorneys' fees, pursuant to §1021.5, of $192,555.00); *Castro v. Chang Sup Han (In re Chang Sup Han)*, 2015 Bankr. LEXIS 3210, at *32 (Bankr. C.D. Cal. Sep. 22, 2015) (awarding fees of $138,866.50 and costs of $9,377.42, a total of $148,243.92, under § 1194(a) and Code of Civil Procedure § 1021.5).

26. To take Plaintiff's individual claims from filing of the Complaint to discovery, and through trial will likely involve at least 100 hours of attorney time. In denying motions for remand, District courts in the Ninth Circuit have acknowledged "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case." *Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 47144, at *11 (N.D. Cal. Apr. 15, 2010); *Cagle v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 21571, at *30 (E.D. Cal. Feb. 18, 2014). Courts have also found that 100 hours is a "conservative" estimate of how much time attorneys litigate individual wage and hour cases. *Ott v. Cooper Interconnect, Inc. A Corp.*, 2023 U.S. Dist.LEXIS 151475, at *11-12 (C.D. Cal. August 25, 2023); *Swans v. Fieldworks, LLC*, 2023 U.S. Dist. LEXIS 8121, at *6-7.

27. Here, Plaintiff is represented by the law firm Lavi & Ebrahimian. (Complaint.) Specifically, by Joseph Lavi, Vincent C. Granberry, Jeffrey D. Klein, and Win Pham. Mr. Lavi was admitted to the California bar in 2000 (*see* http://apps.calbar.ca.gov/attorney/Licensee/Detail/209776), Mr. Granberry was admitted to the California bar in 2011 (*see* http://apps.calbar.ca.gov/attorney/Licensee/Detail/276483), Mr. Klein was admitted to the California bar in 2014 (*see* https://apps.calbar.ca.gov/attorney/Licensee/Detail/297296), and Mr. Pham was admitted to the California bar in 2022 (*see*

https://apps.calbar.ca.gov/attorney/Licensee/Detail/347399). Defendant's counsel, Kathy A. Le, has represented employers in employment litigation for over 13 years in California, and is familiar with fees requested by plaintiffs' counsel in similar actions filed in California state and federal courts alleging wage and hour violations, and related claims. (Le Decl., ¶¶ 8-9.) Based on Plaintiff's counsel's experience, it is not unreasonable to expect a blended billing rate of at least $550 per hour for them. (*Id.*; *see also Velazquez v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 202124, at *7 (C.D. Cal. Mar. 11, 2013) (finding an hourly rate of $600 to be "reasonable" in a wage and hour case); *Anderson v. Nextel Retail Stores, LLC*, 2010 U.S. Dist. LEXIS 71598, at *24 (C.D. Cal. June 30, 2010) (hourly billing rates ranging from $450 to $515 for associates and $600 to $750 for partners are reasonable in a "straightforward wage-and-hour litigation").) Thus, at a blended rate of $550/hour, attorneys' fees would reach **$55,000** after just 100 billable hours. (Le Decl., ¶¶ 8-9.)

28. It cannot be said to a legal certainty that Plaintiff would not be entitled to recover the jurisdictional amount if Plaintiff prevails at trial as the potential recovery here for compensatory damages and attorneys' fees establishes that the amount in controversy exceeds the jurisdictional requirement under 28 U.S.C. § 1332(a):

| Claim | Amount |
|---|---|
| Unpaid Minimum Wages | $51,453.64 |
| Unpaid Overtime | $27,829.49 |
| Meal Premiums | $30,921.66 |
| Rest Premiums | $30,921.66 |
| Unpaid Sick Time | $1,457.28 |
| Wage Statement Penalties | $4,000.00 |
| Waiting Time Penalties | $7,286.40 |
| Attorneys' Fees | $55,000.00 |
| **TOTAL less attorneys' fees** | **$153,870.14** |
| **TOTAL including attorneys' fees** | **$208,870.14** |

29. As such, the amount in controversy requirement is satisfied here.

**Supplemental Jurisdiction**

30. Where diversity jurisdiction exists as to any claim, the district courts shall have supplemental jurisdiction "over *all other claims* that are so related to claims in the action within such original jurisdiction that they form *part of the same case or controversy under Article III….*" 28 U.S.C. § 1367(a) (emphasis added).

31. Moreover, where the amount in controversy requirement for diversity jurisdiction is satisfied as to a plaintiff's claim, the district court may adjudicate other state law claims for lesser amounts if they are part of the "same Article III case or controversy," including claims by unnamed members of a class on whose behalf the action is brought. *Exxon Mobil Corp. v. Allapattah Services, Inc*. 545 U.S. 546 566-567 (2005) (court could exercise supplemental jurisdiction over other class members' claims because at least one class member's claim met the jurisdictional minimum); *Alcatel Lucent United States, Inc. v. Dugdale Communs., Inc.*, 2010 U.S. Dist. LEXIS 22226, at *16 (C.D. Cal. Mar. 5, 2010) ("to determine whether claims are part of the same case or controversy… examine whether they involve a 'common nucleus of operative Complaint.'").

32. Here, the jurisdictional amount is satisfied because Plaintiff's claims exceed the sum or value of $75,000, and the Court has supplemental jurisdiction because Plaintiff's class claims brought on behalf of the putative class arise from a "common nucleus of operative facts," i.e., the alleged claims stem from putative class members' alleged employment with Defendant and Defendant's wage and hour policies and practices (Complaint ¶¶ 48(B)-(C) ["Common questions of law and fact exist as to all members of the Plaintiff classes and predominate over any questions that affect only individual members of each class…."Plaintiff's claims are typical of the claims of the class members in each of the classes."]), so that considerations of judicial economy, convenience and fairness to litigants favor trial in a single proceeding. Accordingly, the alleged claims of the unnamed putative class members whom Plaintiff seeks to represent are so related to Plaintiff's claims that they form part of the same case or controversy.

33. WHEREFORE, Defendant respectfully requests that the State Court Action be removed from the Superior Court of the State of California for the County of Monterey to this Court.

DATED: July 2, 2025                    JACKSON LEWIS P.C.

                                       By:    */s/ Lauren B. Shelby*
                                              Kathy A. Le
                                              Lauren B. Shelby
                                              Attorneys for Defendant
                                              WYNDHAM VACATION OWNERSHIP, INC.

# CERTIFICATE OF SERVICE

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

**CASE NAME:** *Audrey Romalda Arroyo v. Wyndham Vacation Ownership, Inc.*

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is: 200 Spectrum Center Drive, Suite 500, Irvine, California 92618.

On July 2, 2025, I caused the foregoing document(s) described as: **DEFENDANT WYNDHAM VACATION OWNERSHIP, INC.'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA – PURSUANT TO 28 U.S.C. §§ 1332(a), 1367(a), 1441(a) and 1441(b), and 1446** to be served on all interested parties in this action as follows:

| | |
|---|---|
| Joseph Lavi<br>Vincent C. Granberry<br>Jeffrey D. Klein<br>Win Pham<br>LAVI & EBRAHIMIAN, LLP<br>8889 W. Olympic Blvd., Suite 200<br>Beverly Hills, California 90211 | Attorneys for Plaintiff<br>AUDREY ROMALDA ARROYO<br><br>Telephone: (310) 432-0000<br>Email: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com<br>jklein@lelawfirm.com<br>wpham@lelawfirm.com |

**[X] BY MAIL:**

**[X]** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. I placed the above-named document[s] in an envelope, addressed to the party[ies] listed above. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**[X] BY NOTICE OF ELECTRONIC FILING**. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E) and L.R. 5.4 (c)-(d)

**[X] FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 2, 2025, at Irvine, California.

*/s/ Stacy Boura*
Stacy Boura

4925-8382-8811, v. 3